**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CR. NO. 06-135 (PG) |
| WILFREDO JIMENEZ-TORRES, | |
| Defendants. | |

**OPINION AND ORDER**

Pending now before the Court is defendant Wilfredo Jimenez-Torres' (hereinafter "Defendant" or "Jimenez-Torres") motion to suppress (Docket No. 28). The Defendant moves to suppress evidence in a supervised release revocation hearing that was allegedly seized in violation of his Fourth Amendment rights. The United States opposed his request (Docket No. 29). For the reasons set forth below, the Court **DENIES** the Defendant's motion.

**I. BACKGROUND**

On July 21, 2006, the Court sentenced Jimenez-Torres to thirty-six (36) months of imprisonment to be followed by a three-year supervised release term after he was convicted of violating 18 U.S.C. §§ 922(g)(1), 924(a)(2) (possession of firearm by convicted felon; aiding and abetting). On September 23, 2008, the Defendant was released from custody at which time he began his term of supervised release. However, on February 8, 2010, the government filed a motion requesting that an arrest warrant be issued as to the Defendant and that his period of supervision be tolled because he violated the conditions of his release by: (1) committing another federal, state or local crime; (2) possessing a firearm; (3) associating with a convicted felon; and, (4) failing to relocate to another address. See Docket No. 13. Among other things, the government informed the Court that on January 13, 2010, Jimenez-Torres, along with others, was arrested by Commonwealth of Puerto Rico police officers and charged with various violations to the Puerto Rico Weapons Law. See id.

In response, the Defendant filed a motion to suppress evidence (Docket No. 28). According to the Defendant, the state police stopped him for an alleged traffic violation and searched his vehicle without consent or a search

warrant. At the time, Jimenez-Torres was driving and 4 additional passengers were in the vehicle. During the search, the state police found two weapons, and consequently, all vehicle occupants were charged at the state level. However, the charges were later dismissed against all defendants. The Defendant now argues that the evidence to be used against him in the revocation proceedings to be held before this Court should be excluded because the search performed by the state police violated his rights under the Fourth Amendment. See Docket No. 28. The government opposed the Defendant's motion arguing that the exclusionary rule does not apply in these circumstances. See Docket No. 29.

## II. DISCUSSION

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures … ." Nevertheless, the Amendment "says nothing about excluding their fruits from evidence; exclusion comes by way of deterrent sanction rather than to avoid violation of the substantive guarantee. Inadmissibility has not been automatic, therefore, but we have instead applied an exclusionary-rule balancing test." Kansas v. Ventris, 129 S.Ct. 1841, 1845 (2009) (citing Walder v. United States, 347 U.S. 62, 65 (1954)). "The rule is prudential rather than constitutionally mandated," Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363 (1998), and thus, it has been held to be applicable "only where its deterrence benefits outweigh its substantial social costs." Id. (internal quotation marks omitted).[1]

When applicable, the exclusionary rule "forbids the use of improperly obtained evidence at *trial*." Herring v. U.S., 129 S.Ct. 695, 699 (2009) (emphasis ours). However, the Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials," Scott, 524 U.S. at 363 (internal citations omitted), which leads to the issue now presented: whether or not the exclusionary rule applies with equal force as in criminal trials to proceedings instituted by the

---

[1] After a considering the benefits and costs of applying the exclusionary rule, the Supreme Court in *Scott* held that the federal exclusionary rule does not bar the introduction at a state parole revocation hearing of evidence seized in violation of a parolee's Fourth Amendment rights inasmuch as the government's *use* of such evidence does not itself violate the Constitution. That is because the constitutional violation has already taken place by the illegal search or seizure and the exclusionary rule cannot itself cure the invasion of rights. See Scott, 524 U.S. at 363.

government to revoke a convicted defendant's supervised release. See <u>U.S. v. Gravina</u>, 906 F.Supp. 50 (D.Mass. 1995).

All other Circuit Courts of Appeals that have addressed the issue, as well as the District Court of Massachusetts, have held that the exclusionary rule is not applicable in parole, probation, or supervised release revocation hearings. See <u>United States ex rel. Sperling v. Fitzpatrick</u>, 426 F.2d 1161, 1163 (2d Cir.1970); <u>United States v. Bazzano</u>, 712 F.2d 826, 830-34 (3d Cir.1983); <u>U.S. v. Armstrong</u>, 187 F.3d 392 (4th Cir.1999); <u>United States v. Brown</u>, 488 F.2d 94, 95 (5th Cir.1973); <u>United States v. Farmer</u>, 512 F.2d 160, 162-63 (6th Cir.1975); <u>United States v. Hill</u>, 447 F.2d 817, 819 (7th Cir.1971); <u>United States v. Frederickson</u>, 581 F.2d 711, 713 (8th Cir.1978); <u>United States v. Winsett</u>, 518 F.2d 51, 53-55 (9th Cir.1975); <u>United States v. Finney</u>, 897 F.2d 1047, 1048 (10th Cir.1990); <u>Gravina</u>, 906 F.Supp. 50 (D.Mass. 1995). Nevertheless, we will address the Defendant's objections in turn.

In his motion to suppress, Jimenez-Torres first attempts to distinguish his case by arguing that *Scott* is specifically about parole hearings and there is no parole in the federal system. See Docket No. 28 at page 5. The Defendant adds that different from parole proceedings, federal revocation proceedings are adversarial, and thus the exclusionary rule should apply therein. <u>Id.</u> at 4.

Faced with the same objection, the Fourth Circuit Court of Appeals noted that "parole and supervised release are 'analogous contexts.'" <u>Armstrong</u>, 187 F.3d at 394 (<u>citing</u> <u>United States v. Woodrup</u>, 86 F.3d 359, 361 (4th Cir.1996)) (holding exclusionary rule did not apply to federal supervised release revocation proceedings after drugs and weapons were discovered in defendant's car during routine traffic stop). Accordingly, the court in *Armstrong* found that "[a]lthough supervised release revocation proceedings, unlike parole revocation proceedings, do take place before a judge, they are characterized by the same 'flexibility' that the Supreme Court found significant in *Scott*." <u>Armstrong</u>, 187 F.3d at 394. <u>See also</u> <u>Scott</u> 524 U.S. at 365 ("The exclusionary rule, … , is incompatible with the traditionally flexible, administrative procedures of parole revocation).

Moreover, the District Court of Massachusetts, analyzing a similar inquiry to the one before this Court, stated that "[a]s the standards and interests involved are essentially the same in the parole, probation, and supervised release revocation contexts, the reasoning underlying cases

concerning the admissibility of evidence in one type of hearing are applicable to the other two as well." Gravina, 906 F.Supp. at 53 n. 1 (holding that exclusionary rule did not apply to supervised release revocation hearings absent evidence of police harassment or other misconduct and did not bar admission of evidence seized in violation of Fourth Amendment when government sought to revoke supervised release of defendant based on probation violations and alleged commission of various crimes). The court thus held that the probation revocation determination process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. at 53.

This Court agrees with the cited courts' assessment as to the flexible nature of these types of proceedings, and finds that, contrary to what is asserted by the Defendant, the essential characteristics of the supervised release revocation proceedings do not support the application of the exclusionary rule.

Second, relying on the Justice Souter's dissent in *Scott*, the Defendant contends that to the extent the primary purpose of the exclusionary rule is to deter future unlawful police conduct, the same should be applied in the present case. Otherwise, the Defendant contends, abuse by law enforcement agents would increase; state police will harass parolees/probationers/supervisees knowing that even if the evidence is thrown out at the state level, they will be revoked at the federal level with that same evidence; and, federal authorities will use state police to violate defendant's Fourth Amendment right and use illegally obtained evidence at revocation hearings. See Docket No. 28.

As stated by the Supreme Court in *Scott*, "[b]ecause the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions." Scott 524 U.S. at 364. "Although we have held these costs to be worth bearing in certain circumstances, our cases have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule." Id. at 364-365. Pursuant to the foregoing, the Supreme Court in *Scott* declined to allow the application of the exclusionary rule in parole revocation proceedings, even considering the

possibility that the officer performing the illegal search knows that the subject of his search is a parolee. Id. at 367-368. To that effect, the Supreme Court stated that, first of all, it had "never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence," id. at 368 (internal citations omitted), and second, that "such a piecemeal approach to the exclusionary rule would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." Id. (internal citations omitted).

Finding that the situation in *Scott* is analogous to the one at hand, this Court "agrees with the majority position that the crucial goals of supervised release and probation - the reintegration into society of its nonconforming members and the protection of the public from criminals - outweigh whatever marginal and speculative deterrent effect the imposition of the exclusionary rule may have." Gravina, 906 F.Supp. at 53. As a result, it follows that the reasons set forth by the Defendant are insufficient to ground a decision in support of his position that the exclusionary rule be applied in this context.

Finally, the Court also notes that, as observed in *Scott*, the revocation of Defendant's supervised release deprives him "not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special … restrictions." Scott, 524 U.S. at 365. The Defendant was entrusted with the abidance to the conditions of his supervised release. He cannot violate these conditions, get caught and then request that the evidence that proves said violation be excluded from these proceedings so he can continue enjoying his release at large. Simply put, the Defendant cannot have the cake and eat it too.

The Court sees no reason to disagree with the majority position of the Circuit Courts and the prior holding of our sister court, the District of Massachusetts. Therefore, we also hereby hold that the exclusionary rule does not apply to supervised release revocation hearings and does not forbid the use of evidence obtained in violation of the Fourth Amendment in such proceedings.[2]

---

[2]Finally, the Court also notes that the government has set forth two (2) additional violations to the conditions of Defendant's supervised release that are unrelated to the evidence seized in violation of his Fourth Amendment rights, namely: his association with convicted felon Pablo Massa-Osorio and his failure to relocate from Ramos Antonini Public Housing. See Docket No. 13. Therefore, even if this Court did not consider the evidence that

CR. NO. 06-135 (PG)                                                                Page 6

### III. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Defendant's motion to suppress evidence (Docket No. 28).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, June 30, 2010.

                                        S/ JUAN M. PEREZ-GIMENEZ
                                        JUAN M. PEREZ-GIMENEZ
                                        U.S. DISTRICT JUDGE

_____

was allegedly illegally seized, the result would be the same.